UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE SKURKIS**, *et al.*, <br><br>  Plaintiffs, <br><br> vs. <br><br> **ARMANDO MONTELONGO, JR.**, *et al.*, <br><br>  Defendants. | Case No.: 16-cv-0972 YGR <br><br> **ORDER ON MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION TO FILE UNDER SEAL; CONTINUING INITIAL CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. Nos. 28, 39 |

Plaintiffs are 163 individuals who are former students of real estate education programs allegedly run by defendant Armando Montelongo, Jr. and by business entities allegedly owned by Montelongo. Plaintiffs bring this Racketeer Influenced and Corrupt Organizations Act ("RICO") action against defendants Real Estate Training International, LLC ("RETI"), Performance Advantage Group, Inc. ("PAG"), and License Branding, LLC ("License Branding") (collectively, "AMS") and against Montelongo individually for their alleged racketeering activities in fraudulently marketing and selling their services to plaintiffs. The first amended complaint (Dkt. No. 29, "FAC") alleges causes of action against all defendants for (1) conducting a racketeering enterprise and (2) conspiracy to conduct a racketeering enterprise in violation of RICO, 18 U.S.C. sections 1962(c) and (d).

Currently before the Court is defendants' motion to dismiss for lack of personal jurisdiction and improper venue. (Dkt. No. 39.) In the alternative, defendants argue the case should be transferred to the Western District of Texas for issues of convenience. (*See id.*) Having carefully considered the pleadings in this case, the papers submitted on this motion, and for the reasons set forth herein,[1] the Court **GRANTS** defendants' motion to dismiss for lack of personal jurisdiction and provides certain plaintiffs **LEAVE TO AMEND**. The Court reserves on the balance of defendants' arguments regarding venue pending the filing of any second amended complaint.

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

## I. BACKGROUND

Defendant Armando Montelongo is a former reality TV personality who starred on the show "Flip This House" on the A&E network. (Dkt. No. 28, "FAC," ¶ 4.) Montelongo is Texas real estate investor who now offers real estate seminars nationwide through defendants RETI, PAG, and License Branding, which allegedly operate collectively with others as an enterprise known as AMS. (*Id.*) The educational programs offered through AMS claim to be a "'methodological step-by-step system for building wealth in real estate' modeled on Montelongo's own experiences." (*Id.* ¶ 5.) The AMS system is built on several educational seminars or events, namely the: preview event, foundation event, bus tours, and continuing education programs. (*Id.* ¶ 6.) In 2013, Montelongo reported his seminars would bring in $100 million from over 350,000 students attending more than 3,500 events nationwide. (*Id.* ¶ 7.)

Plaintiffs allege that the AMS enterprise – through its products, events, and services – engages in coercive and deceptive sales tactics to bait students into paying for the AMS program. (*See id.* ¶¶ 9–20.) For example, AMS allegedly lures students to attend an initial free event through deceptive advertising. (*Id.* ¶ 9.) Once the students are at the events, AMS creates an atmosphere of coercion and false promises, inducing the students to pay thousands of dollars to attend additional events and seminars. (*Id.* ¶¶ 11–12.) AMS also engages in self-dealing by encouraging students to transfer money from their secure retirement accounts to accounts held by third parties aligned with AMS. (*Id.* ¶ 16.) Montelongo and AMS employees allegedly instill fear in the students to discourage the students from questioning the AMS methodology. (*Id.* ¶ 19.) Plaintiffs allege Montelongo instructs AMS employees to make students think they have received a benefit when he knows that the AMS system is in fact worthless. (*Id.* ¶ 22.)

Plaintiffs are former students who each paid thousands of dollars to participate in AMS real estate programs. (*Id.* ¶ 35.) Of the 163 plaintiffs, 35 are California residents who attended AMS events in California. (*Id.* ¶ 66.) Although not alleged in the FAC, plaintiffs argue that some non-residents nonetheless attended AMS events in California. (Dkt. No. 41 at 8.) Plaintiffs allege Montelongo and AMS are members of a RICO enterprise engaged in racketeering acts affecting interstate commerce, including: wire fraud through emails, Facebook posts, appearances on national

television, YouTube videos, and maintenance of the AMS website in violation of 18 U.S.C. § 1961; transport of more than $5,000 through interstate commerce in violation of 18 U.S.C. § 2314; and devising a scheme to induce persons to cross interstate lines to defraud them out of more than $5,000 in violation of 18 U.S.C. § 2314.  (*See* FAC ¶¶ 36–45.)  Plaintiffs allege damages in the amount of money they paid to AMS, expenses they incurred to attend the AMS events, and the investments they lost due to the AMS system.  (*Id.*)

Defendants now challenge the Court's personal jurisdiction over them as non-residents of California.  Montelongo resides in San Antonio, Texas, (*id.* ¶ 48) while RETI, PAG, and License Branding all maintain their principal places of business in San Antonio, Texas (*id.* ¶¶ 49–51). Plaintiffs argue that jurisdiction is appropriate based on the Texas defendants' contacts with California, either separately or collectively as alter egos of Montelongo.

## II.   EVIDENTIARY OBJECTIONS

Defendants object to evidence submitted by plaintiffs in opposition to the motion.  The Court rules as follows on objections to the evidentiary exhibits attached to the declaration of plaintiffs' attorney Christopher Wimmer (Dkt. Nos. 42-1 to 42-22) for purposes of this motion only:

- Exhibit A: **SUSTAINED** as inadmissible hearsay and for lacking personal knowledge;
- Exhibit C: **SUSTAINED** as not properly authenticated by plaintiffs; and
- Exhibits F through M, P, Q, and R: **DENIED AS MOOT** as those exhibits are submitted to support plaintiffs' alter ego theory, which the Court cannot reach absent jurisdiction over Montelongo.

The Court rules as follows on objections to the declaration of plaintiffs' attorney Christopher Wimmer (Dkt. No. 42) for purposes of this motion only:

- Paragraphs 2–4: **SUSTAINED** as inadmissible hearsay and for lacking personal knowledge;
- Paragraph 6: **SUSTAINED** as inadmissible hearsay;
- Paragraphs 7–8: **DENIED AS MOOT** as those paragraphs go only to general jurisdiction;
- Paragraphs 9–14: **DENIED AS MOOT** as those paragraphs are provided to support plaintiffs' alter ego theory, which the Court cannot reach absent jurisdiction over

3

Montelongo.

Defendants additionally object to the supplemental evidence plaintiffs submitted (Dkt. No. 46-2, 46-3) as inadmissible hearsay and barred by the Best Evidence Rule. Those objections are **DENIED AS MOOT** as the evidence goes only to general jurisdiction and is inapplicable to the Court's analysis of specific jurisdiction over defendants.

### III. PERSONAL JURISDICTION

The Court first addresses defendants' threshold argument that the FAC should be dismissed with prejudice on grounds that the Court does not have personal jurisdiction over them.

#### A. Legal Framework

A motion under Rule 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Where no federal statute governs personal jurisdiction, a court applies the law of the state in which it sits. Here, California law applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Due process requires that the non-resident defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Where, as here, the motion to dismiss is based on written submissions the plaintiff need only make a *prima facie* showing of jurisdiction with admissible evidence. *Schwarzenegger*, 374 F.3d at 800; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In evaluating the proffer, a district court must (i) accept as true the uncontroverted allegations in the complaint and (ii) resolve conflicts between facts contained in the parties' affidavits in a plaintiff's favor. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). The contacts of one party may be attributed to another upon a showing that one party is an "alter ego" of another. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015).

4

**B. Analysis**

Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Plaintiffs do not argue general jurisdiction but rather rely on specific jurisdiction.[2] In the alternative, plaintiffs argue the entity defendants are subject to jurisdiction based on the contacts of Montelongo under an alter ego theory. Should the Court disagree, plaintiffs request jurisdictional discovery and an opportunity to further amend their jurisdictional allegations. Defendants oppose plaintiffs' requests if their motion is granted. The Court addresses the parties' argument in turn:

*1. Specific Jurisdiction: Defendants' Contacts with California*

Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). Said otherwise, personal jurisdiction requires the Court to evaluate whether the specific activity giving rise to the plaintiffs' causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250–53 (1958). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

---

[2] While plaintiffs claim not to rely on general jurisdiction, plaintiffs largely point to evidence and allegations tending to support a theory of general jurisdiction based on defendants' contacts with California untethered to plaintiffs' claims. *See* Section III.B.1, *infra*.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The plaintiff bears the burden of demonstrating the first two prongs.  *Id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  If plaintiffs fail to satisfy either of these prongs, then personal jurisdiction is not established in the forum state.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  If plaintiffs carry this burden, then "defendant[s] must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Boschetto*, 539 F.3d at 1016. (citing *Schwarzenegger*, 374 F.3d at 802).

Thus, the Court must determine whether plaintiffs have made a *prima facie* case of personal jurisdiction as to each defendant based on *each* defendant's *own* contacts with California.  This inquiry requires an analysis of each defendant's contacts in light of plaintiffs' claims.  *Schwarzenegger*, 374 F.3d at 802.  Here, the jurisdictional allegations of the FAC group all defendants together.  Plaintiffs generally allege the Court has personal jurisdiction over defendants because they: (i) purchased television and radio advertising in and aired an AMS infomercial in California; (ii) direct Facebook advertising to California; (iii) advertise California events on their website; (iv) held events in California at which they sold their seminar products; and (iv) had employees and agents living in California between 2011 and the present.  (*See* FAC ¶¶ 58–65.)  Plaintiffs further allege that the claims of the 35 California residents arise out of these contacts because they were "lured into the AMS events with misleading advertisements in California, and then scammed out of tens of thousands of dollars each by the Defendants in this state [sic]."  (*Id*. ¶ 66.)

In opposition to defendants' Rule 12(b)(2) motion, plaintiffs for the first time attempt to differentiate among the contacts made by each defendant.  As to Montelongo, plaintiffs submit declarations from 33 plaintiffs who attended AMS events in California that claim Montelongo was "physically present" at certain California events.  (Dkt. Nos. 42-2, 42-3 at ¶¶ 5–6.)  The declarations are not sufficient for purposes of specific personal jurisdiction.  At most, they show Montelongo's presence in California and attendance at AMS events.  Plaintiffs must allege how Montelongo's presence in California gave rise to their causes of action for jurisdiction to arise therefrom.  Said otherwise, plaintiffs must allege how Montelongo's presence at the California events relates to their own RICO claims against him.

6

With respect to defendants RETI, PAG, and License Branding, plaintiffs do not submit any admissible evidence.[3] *See* Section II, *supra*. As such, plaintiffs present only the FAC allegations referring to "AMS" conduct generally. These conclusory allegations do not establish that the entity defendants directed their actions to California. Plaintiffs must draw the necessary connection between plaintiffs' claims on the one hand and a particular defendant's conduct in or directed toward California on the other. Absent such a showing, plaintiffs have not met their burden.

*2. Alter Ego: Imputing Montelongo's Contacts with California*

Having failed to show that defendants are independently subject to jurisdiction in California, plaintiffs argue that Montelongo's conduct may be imputed to each entity defendant through an alter ego theory. Plaintiffs' theory assumes they have shown sufficient contacts by Montelongo such that imputing his contacts to the entity defendants would allow for jurisdiction over them as well. But as discussed in Section III.B.1, *supra*, plaintiffs have not yet established jurisdiction over Montelongo.

Even if plaintiffs made a *prima facie* showing of jurisdiction over Montelongo, their alter ego argument would still fail. In narrow circumstances federal courts will find that a defendant is the alter ego of another by "'pierc[ing] the corporate veil' and attribut[ing] a subsidiary's [contacts with] the forum state to its [shareholder] for jurisdictional purposes." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). To survive a Rule 12(b)(2) motion on an alter ego theory a plaintiff must make a *prima facie* showing that both: (1) there is a unity of interest and ownership between the corporations such that their separate personalities do not actually exist, and (2) treating the corporations as separate entities would result in injustice. *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001)). The first prong of the alter ego test requires "a showing

---

[3] As discussed in Section III.C, *infra*, the Court recognizes that the inadmissible evidence, if included as allegations in a second amended complaint, may be sufficient to support specific jurisdiction over defendants. For example, specific jurisdiction over RETI or PAG may arise if the second amended complaint alleges that particular plaintiffs paid RETI or PAG for seminar products while residing in or attending events in California. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1210 (9th Cir. 2006) ("A single forum state contact can support jurisdiction if "the cause of action ... arise[s] out of that particular purposeful contact of the defendant with the forum state.") (alterations in original) (quoting *Lake*, 817 F.2d at 1421). At present, plaintiffs have neither alleged nor submitted admissible evidence showing that any plaintiff paid a certain defendant for a seminar product giving rise to their claims in California.

7

that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id*. (quoting *AT&T Co*., 94 F.3d at 591). It requires such "pervasive control" that it can only be met where a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*. Importantly, the Ninth Circuit has emphasized that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id*. (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)). Nor can the first prong be met by only showing "an active parent corporation involved directly in decision-making about its subsidiaries' holdings" where the corporations "observe all of the corporate formalities necessary to maintain corporate separateness . . . ." *Unocal*, 248 F.3d at 928. Courts consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014)).

Here, previewing plaintiffs' evidence, it goes only to the third, fourth, and ninth factors. Accepted as true, and taken it in a light most favorable to plaintiffs, the evidence shows only that Montelongo owns the entity defendants, he is an officer of all entity defendants, and AMS presents itself as one integrated company on its website. These conclusory allegations of ownership alone are not enough for the Court to disregard the corporate form. *See, e.g., Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) ("broad allegations are not sufficient to show a unity of interest and ownership"). Courts recognize that shareholders and their subsidiaries presenting themselves online as one integrated organization does not rise to the level of unity of interest required to show alter ego. *See Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [a company's] website and in its press releases

8

simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) ("marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"). Nor do plaintiffs connect defendants' unified presence online to their status as alter egos of one another. Thus, this evidence would be legally insufficient to satisfy the unity of interest prong of the alter ego test. *Rutsky*, 328 F.3d at 1135 (facts showing that shareholder wholly owned subsidiary, shareholder and entity shared the same officers and directors, co-employed staff, and shared physical office space did not satisfy first prong of alter ego test); *Stewart*, 81 F. Supp. 3d at 956 (finding that a showing of the third, fourth, and ninth factors "even when considered together, are not sufficient to support a finding of unity of interest among" the defendants).

Moreover, plaintiffs make no proffer as to the second prong of the alter ego test. Should plaintiffs continue to pursue their alter ego theory, they must address why treating RETI, PAG, and License Branding as entities separate from Montelongo would result in injustice.

### C. Leave to Amend

Leave to amend is liberally granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). Plaintiffs argue the inadmissible exhibits to the Wimmer Declaration (*i.e.*, Exhibits A and C) show that plaintiffs made payments to defendants RETI, PAG, and License Branding for various AMS seminars and events that plaintiffs attended in California. While this evidence is not admissible in its present form, the Court recognizes that plaintiffs could make a *prima facie* showing of specific jurisdiction if properly presented. Similar allegations or evidence that plaintiffs executed a contract with a particular defendant in California, purchased a product from a particular defendant in California, or made a payment to a particular defendant for products or services rendered in California may be sufficient. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1210 (9th Cir. 2006) ("A single forum state contact can support jurisdiction if "the cause of action ... arise[s] out of that particular purposeful contact of the defendant with the forum state.") (alterations in original) (quoting *Lake*, 817 F.2d at 1421). The Court therefore **GRANTS** leave to amend the jurisdictional allegations with respect to plaintiffs who (i) resided in California when their claims arose, (ii) attended an AMS event giving rise

9

to their claims in California, or (iii) otherwise are able to allege that their own claims arise out of a particular defendant's contacts with California.[4]

One exception to this general rule of permissiveness is where amendment would be futile. *Foman*, 371 U.S. at 182; *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004). Plaintiffs whose claims have no connection to California cannot, as a matter of law, establish specific personal jurisdiction over defendants. Accordingly, those plaintiffs with no claim arising out of defendants' contacts with California are **DENIED** leave to amend.

Any further amended complaint must address personal jurisdiction allegations as to each defendant separately to make the requisite showing: (i) of each defendant's own contacts with California, (ii) that each defendant's contacts with California are directly related to each plaintiff's claim, and/or (iii) that each entity defendant should be treated as an alter ego of Montelongo.

**IV.    VENUE**

Defendants move to dismiss under Rule 12(b)(3), arguing venue is improper in the Northern District of California, and, in the alternative, to transfer the case to the Western District of Texas pursuant to 28 U.S.C. section 1406(a) to promote the interests of justice. Having found that plaintiffs have not yet alleged a *prima facie* showing of personal jurisdiction over defendants, whether this case is venued here appropriately need not be reached at this juncture. The Court will address venue only if plaintiffs successfully plead that defendants are personally subject to the jurisdiction of this Court.

**V.    ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

Pursuant to Local Rule 79-5 plaintiffs move to file the FAC under seal such that the public version of the FAC redacts the names of non-parties, including the names of: defendants' allies allegedly under criminal investigation, defendants' accountant, and defendants' employees and other agents in California. (Dkt. No. 28.) Defendants did not object. Given the anticipated filing of a second amended complaint, the Court **GRANTS** plaintiffs' motion for purposes of the FAC only.

///

---

[4] Plaintiffs additionally request jurisdictional discovery as to which defendant entity is responsible for the advertisements directed to California. Previewing the inadmissible evidence, plaintiffs may be able to allege personal jurisdiction against defendants without this information and are granted leave to amend consistent with this Order. The Court **DENIES** the request as premature.

Plaintiffs shall not move to file their second amended complaint under seal. Instead, the Court instructs plaintiffs to refer to these individuals in a manner that identifies them without revealing their names. By way of example, the second amended complaint may refer to defendants' employees as "PAG Employee 1," "PAG Employee 2," and so forth. This protocol is used regularly with respect to employees designated as confidential witnesses in securities cases. It allows plaintiffs to plead with particularity and also insures that the operative complaint may be filed publicly.

### VI.   CONCLUSION

Based upon the foregoing, the Court **GRANTS** defendants' motion to dismiss for lack of personal jurisdiction (Dkt. No. 39) and **DISMISSES** the FAC **WITH LEAVE TO AMEND** as to plaintiffs with claims related to a defendant's (or defendants') contacts with California. Plaintiffs shall file a second amended complaint consistent with this Order to address the issues outlined above within twenty-one (21) days of the date of this Order. Defendants' response thereto shall be filed within fourteen (14) days of the filing of plaintiffs' second amended complaint.

In light of the above, the Court **CONTINUES** the Initial Case Management Conference currently scheduled for September 12, 2016 to be held on **Monday, November 14, 2016** on the Court's **2:00 p.m.** calendar in the Oakland Courthouse, 1301 Clay Street, Oakland, California.

This Order terminates Docket Numbers 28, 39.

**IT IS SO ORDERED.**

Dated: September 9, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**